# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, <br><br> Plaintiff, <br><br> vs. <br><br> DANIEL FINGERHUT, DIGITAL PLATINUM, INC., DIGITAL PLATINUM, LTD., HUF MEDIYA (A.K.A. HOOF MEDIA), TAL VALARIOLA, and ITAY BARAK <br><br> Defendants, <br><br> AICEL CARBONERO, <br><br> Relief Defendant. | Case No. 1:20-cv-21887-DPG <br><br> Hon. Darrin P. Gayles <br><br> **PLAINTIFF'S EXPEDITED MOTION FOR PRELIMINARY INJUNCTIONAND OTHER EQUITABLE RELIEF** |

Plaintiff Commodity Futures Trading Commission ("CFTC" or "Commission") hereby moves the Court on an expedited basis for an order of preliminary injunction against Daniel Fingerhut, Digital Platinum, Inc. ("DPI"), Digital Platinum, Ltd. ("DPL"), Huf Mediya (a.k.a. Hoof Media) ("Huf"), Tal Valariola ("Valariola") and Itay Barak ("Barak") (collectively, "Defendants") enjoining them from committing further violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1-26 (2018), and Commission Regulations, 17 C.F.R. pts. 1-190 (2019), and providing for an order freezing Defendants' assets, requiring an accounting, permitting the inspection of books and records, and other equitable relief.

Contemporaneous with this Expedited Motion for Preliminary Injunction ("Motion"), the CFTC filed: (1) a Complaint for Injunctive and Other Equitable Relief and Penalties Under the

1

Commodity Exchange Act ("Complaint") ; (2) an Expedited Motion for Appointment of a Temporary Receiver; (3) a Combined Memorandum in Support of Plaintiff's Expedited Motion for a Preliminary Injunction, and Expedited Motion for Appointment of a Temporary Receiver ("Memorandum"); and (4) an Expedited Motion for Expedited Discovery. In further support of this Motion, the CFTC states as follows:

1. As demonstrated in the CFTC's accompanying Complaint, Memorandum, and the declarations and attachments to the Memorandum which the CFTC incorporates into this Motion by reference, Defendants have fraudulently solicited tens of millions of customers to open and fund illegal, off-exchange binary options and digital asset trading accounts through websites operated by unregistered binary options and digital asset brokers. Defendants created and/or disseminated fraudulent solicitations (referred to as campaigns) that advised unsuspecting prospective customers to open and fund trading accounts with brokers to access the marketed automated trading software that purported to generate astronomical profits with no risk of loss. Defendants' solicitations included numerous false or misleading statements about the advertised trading software, including: (i) fictitious trading performance and account statements showing consistent profits with no losses; (ii) actors depicted as true users and/or creators of the binary options and/or digital assets automated trading software falsely claiming they had earned significant profits through use of the software; and/or (iii) false representations of actual live automated trading and results using the advertised software.

2. In addition, upon receipt of a Commission subpoena in August 2018 concerning the Commission's investigations related to binary options solicitation fraud, Fingerhut offered to cooperate, prepare a sworn declaration, and testify as a witness against his former colleagues in connection with a related matter, *CFTC v. Atkinson*, No. 18-cv-23992 (S.D. Fla. September 27,

2018).  However, rather than fully and truthfully cooperate, Fingerhut intentionally or recklessly made materially false or misleading statements to Commission Staff and under oath. In particular, Fingerhut made materially false or misleading statements related to (1) his use and deletion of business email accounts, (2) the nature and extent of his role in the fraud, and (3) his possession of a laptop computer.

3. Fingerhut paid off the mortgage on his home with ill-gotten gains in July 2018 and then quit-claimed the deed to Relief Defendant Aicel Carbonero in August 2018.  Carbonero has no justifiable claim or legal interest in the property.

4. By engaging in the conduct described herein and in the Complaint, Defendants violated the core anti-fraud sections of the Act, specifically:

   i. Between June 2014 and October 2016, Fingerhut violated Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2018), and Regulation 32.4, 17 C.F.R. § 32.4 (2019), which prohibits fraud in connection with commodity options transactions, and Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1) (2018), which prohibits fraud by, among others, a Commodity Trading Advisor ("CTA") or an associated person of a CTA;

   ii. AIP's binary options fraud violated the prohibitions against options fraud (7 U.S.C. § 6c(b) and 17 C.F.R. § 32.4) and swaps fraud (Section 6(c)(1) of the Act, 7 U.S.C. § 9(c)(1) (2018), and Regulation 180.1(a)(1)-(3), 17 C.F.R. § 180.1(a)(1)-(3) (2019)) between October 2013 and November 2016, including through Fingerhut's acts between June 2014 and October 2016;

    iii.    Valariola and Barak willfully aided and abetted AIP's conduct constituting violations of §§ 6c(b) and 9(c)(1) of the Act and Regulations 32.4 and 180.1(a)(1)-(3) pursuant to Section 13(a) of the Act, 7 U.S.C. § 13c(a) (2016). Valariola and Barak acted within the scope of their agency, employment, or office with DPL, therefore, DPL is liable for their conduct pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. §1.2. Valariola and Barak are also liable as control persons of DPL for its violations pursuant to 13(b) of the Act, 7 U.S.C. § 13c(b) (2018), because Valariola and Barak controlled DPL, failed to act in good faith and/or knowingly induced DPL's violations between October 2013 and November 2016.

    iv.    Between October 2016 and August 2018, Fingerhut, DPI, DPL, Huf, Valariola, and Barak violated § 9(c)(1) of the Act and Regulation 180.1(a)(1)-(3), which prohibit deceptive devices, schemes and/or artifices in connection with, among other things, commodities in interstate commerce and/or swap (options) transactions; and

    v.    Between August 2018 and May 2019, Fingerhut violated Section 6(c)(2) of the Act, 7 U.S.C. § 9(c)(2) (2018), which prohibits providing false or misleading information to the Commission.

5.    The Act authorizes the CFTC to seek injunctive relief whenever it appears that a person or entity has engaged, is engaging, or is about to engage in any act or practice that violates the Act or CFTC Regulations. 7 U.S.C. §13a-1(a); *see also CFTC v. Wilshire Inv. Mgmt. Corp*, 531 F.3d 1339, 1343 (11th Cir. 2008).

6.    "Upon a proper showing, a permanent or temporary injunction . . . shall be

granted without bond." 7 U.S.C. § 13a-1(b); *see also Wilshire Inv. Mgmt. Corp.*, 531 F.3d at 1343.

7. To make a proper showing that injunctive relief is merited under § 13a-1(a) of the Act, the CFTC must show a person violated and is likely to continue violating the Act, the latter of which "may be inferred from past unlawful conduct." *CFTC v. British Am. Commodity Options*, 560 F.2d 135, 142 (2d Cir. 1977); *see also CFTC v. Sidoti*, 178 F.3d 1132, 1137 (11th Cir. 1999) (finding no abuse of discretion in permanently enjoining further violations "[i]n light of the likelihood of future violations"). "It has long been recognized that in an action brought to enforce the requirements of remedial statutes such as [the Act], a district court has broad discretion to fashion appropriate relief." *CFTC v. Miller*, 570 F.2d 1296, 1300 (5th Cir. 1978) (upholding injunction prohibiting defendant from concealing or disposing of assets). The "unqualified grant of statutory authority to issue an injunction under 13a-1 [of the Act] carries with it the full range of equitable remedies." *Wilshire Inv. Mgmt. Corp.*, 531 at 1344 (holding restitution authorized though not specifically enumerated in Section 6c of the Act).

8. The overwhelming evidence collected thus far reflecting Defendants' massive fraud, scienter, and their failure to appreciate the wrongful nature of their misconduct is highly suggestive of future violations of the Act. Thus, injunctive relief is necessary to prevent Defendants from continuing to defraud others and from any further attempt to evade regulatory scrutiny of their actions. Moreover, Defendants' efforts to obfuscate the existence, accessibility, and production of responsive documents and information demonstrates that injunctive relief is necessary to prevent (further) destruction of Defendants' book and records and to preserve the CFTC's ability to obtain full and complete relief for victims of Defendants' massive fraud upon final adjudication of this action.

9. To preserve the status quo and ensure an adequate remedy remains available for

victims, the CFTC seeks expedited consideration of its Motion. Specifically, the CFTC requests that the Court set a hearing for three weeks from the date of filing. In the interim, the CFTC has separately sought on an expedited basis the ability to conduct expedited discovery to prepare for the hearing.

**WHEREFORE**, the Commission respectfully requests that the Court enter an order of preliminary injunction:

A. Prohibiting Fingerhut from:
   a. Offering to enter into, entering into, confirming execution of, maintaining positions in, or otherwise conducting activities relating to binary options or any commodity interest (as that term is defined in Regulation 1.3(yy), 17 C.F.R. §1.3(yy)(2019);
   b. Acting as an affiliate marketer, CTA, or Associated Person of a CTA in any capacity that involves binary options or any commodity interest (as that term is defined in Regulation 1.3(yy), 17 C.F.R. §1.3(yy)(2019);
   c. Offering so-called autotrading systems or services that purport to trade binary options or any commodity interest (as that term is defined in Regulation 1.3(yy), 17 C.F.R. §1.3(yy)(2019);
   d. Using the instrumentalities of interstate commerce to (1) cheat or defraud, or attempt to cheat or defraud, customers or prospective customers; (2) make or cause to be made false reports or statements to customers or prospective customers; or (3) deceive or attempt to deceive customers and prospective customers , or in connection with, an offer to enter into, the entry into, or the confirmation of the execution of, any commodity option transaction or otherwise violating Section 4c(b) of the Act, 7 U.S.C. §6c(b) (2018), and Regulation 32.4, 17 C.F.R. 32.4 (2019);
   e. Using the mails or any means or instrumentality of interstate commerce, directly or indirectly to (A) employ any device, scheme, or artifice to defraud any participant; or

    (B) engage in any transaction, practice, or course of business that operates as a fraud or deceit upon any participant, in violation of Section of 4*o*(1) of the Act, 7 U.S.C. §6*o*(1) (2012);

  f. Using the instrumentalities of interstate commerce to (1) use or employ, or attempt to use or employ, manipulative devices, schemes, and artifices to defraud; (2) make, or attempt to make, untrue or misleading statements of a material fact; (3) omit to state material facts necessary in order to make statements not untrue or misleading; or (4) engage, or attempt to engage, in acts, practices, and courses of business, which operate or would operate as a fraud or deceit upon customers or prospective customers in connection with swap transaction or otherwise violate Section 6(c)(1) of the Act, 7 U.S.C. § 9(c)(1) (2018), and Regulation 180.1(a), 17 C.F.R. §180.1(a)(1),(3) (2019);

  g. Making false or misleading statements to or using false documents with the Commission or otherwise violate Section 6(c)(2) of the Act, 7 U.S.C. § 9(c)(2);

  h. Destroying, deleting, deactivating or altering in any way any email account used to conduct business related to All In Publishing, Digital Platinum, Inc., Digital Platinum Ltd, and/or Huf Mediya; and

  i. Destroying or altering in any way any laptop computer, tablet, mobile telephone or other electronic device used to conduct business related to All In Publishing, Digital Platinum, Inc., Digital Platinum Ltd., Huf Mediya, Tal Valariola, and/or Itay Barak.

B. Prohibiting Digital Platinum Ltd., Tal Valariola, and Itay Barak from:

  a. Offering to enter into, entering into, confirming execution of, maintaining positions in, or otherwise conducting activities relating to binary options or any commodity interest (as that term is defined in Regulation 1.3(yy), 17 C.F.R. §1.3(yy)(2019);

  b. Offering so-called autotrading systems or services that purport to trade binary options or any commodity interest (as that term is defined in Regulation 1.3(yy), 17 C.F.R.

§1.3(yy)(2019);

    c. Using the instrumentalities of interstate commerce to (1) cheat or defraud, or attempt to cheat or defraud, customers or prospective customers; (2) make or cause to be made false reports or statements to customers or prospective customers; or (3) deceive or attempt to deceive customers and prospective customers , or in connection with, an offer to enter into, the entry into, or the confirmation of the execution of, any commodity option transaction or otherwise violating Section 4c(b) of the Act, 7 U.S.C. §6c(b) (2018), and Regulation 32.4, 17 C.F.R. 32.4 (2019);

C. Prohibiting Digital Platinum, Inc., Huf Mediya, Tal Valariola, and Itay Barak from:

    a. Using the instrumentalities of interstate commerce to (1) use or employ, or attempt to use or employ, manipulative devices, schemes, and artifices to defraud; (2) make, or attempt to make, untrue or misleading statements of a material fact; (3) omit to state material facts necessary in order to make statements not untrue or misleading; or (4) engage, or attempt to engage, in acts, practices, and courses of business, which operate or would operate as a fraud or deceit upon customers or prospective customers in connection with any swap transaction or commodity in interstate commerce, or otherwise violate Section 6(c)(1) of the Act, 7 U.S.C. § 9(c)(1) (2018), and Regulation 180.1(a), 17 C.F.R. §180.1(a)(1),(3) (2019); and

    b. Destroying, deleting, deactivating or altering in any way any email account, backend system, websites, and communications used to conduct business related to All In Publishing, binary options, and any commodity interest (as that term is defined in 17 C.F.R. §1.3(yy));

    c. Destroying or altering in any way any laptop computer, tablet, mobile telephone or other electronic device used to conduct business related to All In Publishing, binary options, and any commodity interest (as that term is defined in 17 C.F.R. §1.3(yy)).

D. Prohibiting each Defendant from trading on or subject to the rules of any registered entity (as

that term is defined in Section 1a of the Act, 7 U.S.C. §1a (2018));

E. Prohibiting each Defendant from entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3(yy), 17 C.F.R. §1.3(yy)(2019)) for their personal account or for any account in which they have a direct or indirect interest;

F. Prohibiting each Defendant from (i) having any commodity interests traded on their behalf; (ii) controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, n any account involving commodity interests; or (iii) soliciting, receiving or accepting any funds from person for the purpose of purchasing or selling any commodity interests;

G. Prohibiting each Defendant from applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. §4.14(a)(9) (2019);

H. Prohibiting each Defendant from acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. §3.1(a) (2019)), agent or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. §1a(38) (2018)) registered, exempted from registration or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. §4.14(a)(9) (2019);

I. Requiring each Defendant to file with the Court, within ten days of the date of the Court's order of a preliminary injunction, a complete and accurate accounting of all of their assets and liabilities, wherever located, together with all funds they received from and paid to others in connection with (i) work related to All In Publishing, DPI, DPL, and Huf; and (ii) commodity futures transactions or purported commodity futures transactions, including binary options and digital assets;

J. Prohibiting each Defendant and Relief Defendant and any firm, corporation, or other person or entity with notice that holds any accounts, funds, assets, or other property of Defendants

from withdrawing, transferring, removing, dissipating, concealing, assigning, pledging, encumbering, disbursing, converting, selling, or otherwise disposing of, in any manner, any funds, assets, or other property of Defendants, wherever situated;

K. Prohibiting each Defendant and Relief Defendant, all persons insofar as they are acting in the capacity of any Defendant's or Relief Defendant's agents, servants, successors, employees, assigns, and attorneys, and all persons insofar as they are acting in active concert or participation with Defendants and Relief Defendants who receive actual notice of such order by personal service or otherwise, from destroying, mutilating, concealing, altering, disposing of, in any manner, any books, records, or other documents of Defendants and Relief Defendant, including all such records concerning Defendants' solicitation and trading activities, wherever located;

L. Prohibiting each Defendant and Relief Defendant, all persons insofar as they are acting in the capacity of any Defendant's agents, servants, successors, employees, assigns, and attorneys, and all persons insofar as they are acting in active concert or participation with Defendants and Relief Defendant who receive actual notice of such order by personal service or otherwise, from refusing to permit authorized representatives of the CFTC to inspect, image, and copy, when and as reasonably requested, any books, records, or other documents of Defendants and Relief Defendant, including all such records concerning Defendants' and Relief Defendant's solicitation and trading activities, assets, and property, wherever located, and whether they are in the possession of Defendants or others, either on or off the premises where they may be situated;

M. Authorizing that copies of the [Proposed] Order of Preliminary Injunction and Appointment of Temporary Receiver may be served by any means, including personal service, United Parcel Service, Federal Express, or other commercial overnight service, email, facsimile, Rule 5 of the Federal Rules of Civil Procedure, or Articles 2 through 10 of the Hague Convention, Service Abroad of Judicial and Extrajudicial Documents, upon any financial

institution or other entity or assets of Defendants and Relief Defendant that may be subject to any provision of the order of preliminary injunction; and

N. Awarding such further relief as the Court deems necessary and appropriate under the circumstances.

Dated: May 6, 2019  Respectfully submitted,

ATTORNEYS FOR PLAINTIFF
COMMODITY FUTURES TRADING
COMMISSION
525 West Monroe Street, Suite 1100
Chicago, Illinois 60661
(312) 596-0714 facsimile
(312) 596-0700

*/s/ Allison V. Passman*
Allison V. Passman
Senior Trial Attorney
Special Bar ID #A5502489
apassman@cftc.gov

Candice Haan
Trial Attorney
Special Bar ID #A5502564
chaan@cftc.gov

Susan J. Gradman
Chief Trial Attorney
Special Bar ID #A5501721
sgradman@cftc.gov