UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>DANIEL FINGERHUT,<br>DIGITAL PLATINUM, INC.,<br>DIGITAL PLATINUM, LLC, HUF MEDIYA, LTD<br>(a.k.a HOOF MEDIA LTD.), TAL VALAROLA and<br>ITAY BARAK<br><br>Defendants,<br><br>AICEL CARBONERO<br><br>Relief Defendant. | Case No.: 20-Civ-21887-GAYLES |

**PLAINTIFF'S EXPEDITED MOTION AND INCORPORATED MEMORANDUM OF LAW FOR ALTERNATIVE SERVICE FOR HUF MEDIYA (A.K.A. HOOF MEDIA LTD) OR IN THE ALTERNATIVE FOR <u>EXPEDITED LIMITED DISCOVERY</u>**

Pursuant to Federal Rule of Civil Procedure 4(f)(3) and (h)(2) and 26(d), Plaintiff Commodity Futures Trading Commission ("Commission or CFTC") respectfully requests that this Court authorize alternative service via email for Defendant Huf Mediya (a.k.a. Hoof Media Ltd., "Huf") or in the alternative, to order expedited limited discovery related to Huf.  In support of this motion, the

1

Commission states the following:

1. On May 4, 2020, the Commission filed a Complaint for Injunctive and Other Equitable Relief alleging core violations of the Act and the Commission's Regulations involving fraud against Defendants Daniel Fingerhut ("Fingerhut"), Tal Valariola ("Valariola"), Itay Barak ("Barak"), Digital Platinum Ltd. ("'DPL"), Digital Platinum, Inc. ("DPI"), Huf, and Relief Defendant Aicel Carbonero. (ECF No. 1.)  As set forth in the Complaint, Defendants' conduct violated multiple sections of core anti-fraud provisions of the Act and Commission Regulations, specifically, Sections 4c(b), 4*o*, 6(c)(1) and 6(c)(2), 7 U.S.C. §§ 6c(b), 6*o*, 9(1), 9(2) (2018) and Regulations 32.4 180.1(a)(1)-(3) and 180.1(a)(2), 17 C.F.R. §§ 32.4, 180.1 (a)(1)-(3) and 180.1(a)(2) (2019).  (*Id*.)

2. The day after filing its Complaint, the Commission filed an Expedited Motion for Preliminary Injunction ("Motion for PI") an Expedited Motion for Appointment of a Temporary Receiver ("Motion"), and an Expedited Motion for Expedited Discovery.  (ECF Nos. ECF Nos. 11-14.)  The evidence submitted in support of the motions makes clear that Huf, Valariola, Barak, and DPL ("Israeli Defendants") (and/or their employees and/or agents) conducted a massive fraudulent solicitation scheme out of the United States for years. (*See generally* ECF Nos. 71, 71-1.)

3. The Complaint alleges that Barak and Valariola owned and/or controlled Huf, a business entity located in Sophia Bulgaria.  (ECF No. 1 ¶¶ 21, 23-24.)  According to Fingerhut and another DPI manager, Jay Passerino, DPL, DPI, and Huf are interchangeable and all entities are owned or controlled by Valariola

and/or Barak. (*See* ECF No. 71-1 at Ex. 1 ¶¶ 82, 86; *see* Excerpt of Deposition of Daniel Fingerhut, attached as Ex. 1 at 223, 234.) Passerino described Huf as another entity under DPL's umbrella, just like DPI. (Declaration of Jay Passerino, attached hereto as Ex. 2 ¶ 13.) Other evidence further supports this conclusion, including that Valariola directed Fingerhut to execute a contract with Huf for his fraudulent marketing, Huf thereafter paid Fingerhut for his services, and Huf paid DPI over $3 million for its role in the fraud. (ECF Nos. 71, 71-1 at Ex. 1.)

    4.    The Commission sent the Complaint, summons, the Commission's expedited motions, and requests for wavier to known counsel for Valariola and Barak via email on May 6, 2020 since they are owners and/or control persons of DPI, DPL, and Huf. (ECF No. 51-1 ¶ 3 (Declaration of Allison V. Passman).) The Commission also requested that counsel waive service, particularly in light of the current pandemic, and notified counsel that the Court set a hearing for May 7, 2020. (*Id.*)

    5.    On May 7, 2020, the Court held a telephonic hearing as to the Commission's expedited motions where counsel for Valariola and Barak appeared and argued. (*See generally* ECF No. 45-2.) The Court held another hearing on May 20, 2020 where counsel for Valariola, Barak, and DPL appeared and argued. (See ECF No. 63.) While Valariola, Barak, and DPL are represented, none of the attorneys who have appeared on their behalf have entered appearances on behalf of Huf (or DPI), nor have they disavowed or controverted the Commission's evidence as to Valariola's and Barak's control of Huf.

  **A. Huf Mediya: A Bulgarian Entity Operating out of Israel**

3

6. Valariola and Barak own, or at a minimum control Hoof, but the entity is registered in Bulgaria and the owner of that company is identified as "Nitsan Peri" or "Nice Peri" in the Bulgarian Register of Companies ("Register").

7. According to the Register, Huf appears to have been organized as a "sole proprietorship with limited liability" on December 14, 2016 with a "seat" for Huff Media EOOD, located at 79 Dondukov Blvd., Sophia, 1504, Bulgaria. (Declaration of Joseph Patrick, attached as Ex. 3 ¶ 5, Att. A.) Huf's business is described in the Register as: "Affiliate marketing online, conducting advertising campaigns, building Internet sites, and other activities not prohibited by law or other regulations." (*Id*. ¶6.)

8. The Register identifies Huf's sole owner and manager as "Nice Peri Nitsan Peri", an Israeli resident. (*Id*. ¶ 7.) The same Israeli is identified as the owner of another business called "Profit Ninja Ltd.", which was established on the same date as Huf, operates out of the same address as Huf, and similarly engages in "Affiliate marketing online, conducting advertising campaigns, building internet sites and other activities not prohibited by law or other regulations." (*Id*. ¶ 8, Att. B.)

9. Despite diligent efforts, the Commission has not been able to identify any contact information for Nice Peri or Nitsan Peri in Bulgaria or Israel, nor has the Commission been able to verify that any officer, owner, or employee is located in Bulgaria at the address identified above or otherwise. (*Id*. ¶¶ 10-11.)

10. Instead, the Commission has identified Nathy Pery, an Israeli resident, who used an email address of nathypery@gmail.com and an Israeli

telephone number to conduct business on behalf of Huf as of at least December 2017. (*See* Ex. 2 ¶¶ 20-23, Att. A; Ex. 3 ¶¶ 10, 11, Att. C.)

11. Specifically, Fingerhut executed a contract with "Hoof Media Ltd." effective as of January 1, 2017 and "Nitsan Pery" executed on behalf of Huf as the "Director". (*Id*.) The contact information for the Director lists the Bulgarian address for Huf, but Nathy Pery's email address and Israeli number. (*Id*.)

12. The contract identified Fingerhut's services as "Email Marketing & Lead Generation." (*Id.*) The governing law provision includes no reference to Bulgaria, but rather requires application of the "domestic laws of the State of China without giving effect to any choice or conflict of law provision or rule that would cause the application of the laws of any jurisdiction other than the State of Israel. The competent court in Hong Kong will have the sole jurisdiction over any dispute arising under this Agreement." (Ex. 2 at Att. A ¶ 6.3.)

13. Valariola also asked Passerino to execute a similar contract with Huf for his work on behalf of the Israeli Defendants, which he did. (*Id*. ¶ 19.)

14. Similarly, in August 2017, Jay Passerino sent invoices to Valariola for his and other DPI's employees' services for July 2017, including for Fingerhut's work. (Ex. 2 ¶ 24-25, Att. E.)  Valariola asked Passerino to "send the invoices to another company Hoof Media Ltd. Reg. no. 204377614 Registered address: 79, Dondukov Blvd., 1504 Sofia, Bulgaria Director: Nitzan Pery Sole shareholder: Nitzan Pery Capital: 10 BGN in 10 shares of 1." (*Id*.)

15. Thereafter, Passerino included the Hoof Media Ltd. address on DPI invoices but he continued to send the invoices via email to Valariola at his digital

platinum email address and not "Nitzan Pery", nathypery@gmail.com, or the physical address provided for Hoof Media Ltd. (*Id.* ¶ 25.)

16. Passerino met Nathy Pery and communicated with her as part of his work for Israeli Defendants. (*Id.* ¶¶ 21-23.) Specifically, Passerino met Pery when he traveled to Israel in approximately August 2017. According to Passerino, Pery worked for Valariola and Barak for years and was involved in the marketing side of the business, media buying, media generation, and lead generation related to DP Defendants' online marketing campaigns. (*Id.*) Passerino communicated with Nathy via email at nathypery@gmail.com while working for Israeli Defendants.

17. According to LinkedIn, Nathy Pery has been the managing director of Roi Boutique, which is also owned and controlled by Valariola and Barak, since January 2017 and appears to reside in the United Kingdom. (Ex. 2 ¶ 14; Ex. 3 ¶ 12, Att. D; ECF No. 71-1, Exhibit 2 ¶¶ 25-27 (Fingerhut Declaration).)

18. Passerino obtained certain documents and communications from Valariola as late as August 2019 by communicating with him using his digital platinum email address (talv@digitalplatinum.com). (Ex. 2 ¶ 45.)

**B. The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents Applies in Israel and Bulgaria, but the Court Should Order Alternative Service on Huf Instead.**

19. Federal Rule of Civil Procedure ("Rule") 4 sets forth the procedures for service of process; Rule 4(h)(2) governs service on foreign corporations like Huf and provides that service may be effectuated in "any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C). Fed.

6

R. Civ. P. 4(h). Pursuant to Rule 4(f), service on Huf can occur in one of three ways:

> (1) "by any internationally agreed means of service that is reasonably calculated to provide notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) If there is no internationally agreed means, or if an international agreements allows for but does not specify other means, by a method that is reasonably calculated to give notice …
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

20. While "compliance with the Convention is mandatory in all cases to which it applies, the Court is permitted to order alternate means of service as long as the signatory nation has not expressly objected to those means." *Sucesores de Done Carlos Nunez Y Dona Pura Galves, Inc. d/b/a Banco Nunez v. Societe Generale, S.A., d/b/a/ SG Americas, Inc., et al.*, No. 19-cv-22842, 2019 WL 5963830 (S.D. Fla. Nov. 11, 2019) (internal quotation and citation omitted).

   a. <u>Serving Huf through the Hague Convention would result in undue delays under the circumstances here.</u>

21. Israel, Bulgaria, and the United Kingdom are all signatories to the Hague Convention and none of those countries explicitly prohibit service via email to defendants, their agents, or attorney(s) as part of their respective international agreements. *See Kipu Sys. LLC v. ZenCharts LLC*, No. 17-24733-civ-WILLIAMS/TORRES, at *2 (S.D. Fla. Mar. 29, 2018) (allowing service of Complaint, summons, and all filings via email for defendant in Bulgaria); *Addidas*

*AG v. The Individuals, Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 19-cv-612624, 2019 WL 7841807, at *2 (S.D. Fla. May 23, 2019) (authorizing email and internet posting for service of complaint, summons, and all filings, including to defendants in Israel); *Jenkins v. Pooke*, No. C 07-03112 JSW, 2009 WL 412987, at *2 (N.D. Cal. Feb. 17, 2009) (authorizing alternative service via email, among other methods, in the United Kingdom).

22. However, service through the Hague Convention takes months and the Commission anticipates additional delays due to the current pandemic. *See, e.g.*, Hague Conference on Private International Law, Bulgaria Authority & practical information, available at https://www.hcch.net/en/states/authorities/details3/?aid=260 (last visited May 14, 2020) (reflecting that it takes two to three months from receipt of the request to when Bulgaria sends back the certificate of service); *id*. at Israel- Authority & practical information, available at https://www.hcch.net/en/states/authorities/details3/?aid=260 (last visited May 14, 2020) (showing that it takes one to four months to execute a request); see also https://www.hcch.net/en/states/authorities/details3/?aid=278 (last visited May 27, 2020) (not specifying any time period); *CFTC v. Yukom Communications Ltd*., No. 19-cv-05416, at ECF No. 20 (N.D. Ill. Jan. 15, 2020) (seeking alternative service in Israel after five months passed since sending pleadings via registered mail with no effective service).

23. Requiring the Commission to carry out service through the Hague Convention for Huf (or Valariola, Barak, and DPL) would unduly delay this

8

litigation, compromising the preservation of evidence and witness recollection of relevant facts as well as adversely affecting victims who may be entitled to restitution for at least a month and more likely many months. *See Fru Veg Mktg., Inc. v. Vegfruitworld Corp.*, 896 F. Supp. 2d 1175, 1182 (S.D. Fla. 2012) (collecting cases and observing that "courts around the country have found that, in order to prevent delays in litigation, service upon foreign defendants through counsel is appropriate."; cf. *Int'l Designs Corp., LLC v. Qingdao SeaForest Hair Prod. Co.*, No. 17-60431-CIV, 2018 WL 2364297, at *3 (S.D. Fla. Jan. 4, 2018) (not authorizing alternative service, in part because "failure to permit alternate service will [not] result in unduly long delays in litigation."). *See also H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.,* 694 F.3d 827, 842 (7th Cir. 2012) ("Moreover, because formal service of process under the Hague Convention or other provisions of law can take months, acceptance of DFS's argument would have the unfortunate effect of immunizing most foreign defendants from needed emergency injunctive relief.")

24. In addition to expected delays for service through the Hague Convention, there is a reasonable likelihood that serving Huf at its Bulgarian address would not be fruitful since it is unclear who, if anyone, occupies Huf's address in Bulgaria, Huf's purported owner and director resided in Israel but may now be in the United Kingdom, and Valariola and Barak reside in Israel and control Huf and/or its purported owner Nathy Pery, who apparently still works for them at another one of their businesses. (*See* ¶¶ 9, 10, 17 *supra*.)

b. *Huf is amenable to service via email*

9

25. Valariola, Barak, and DPL oppose the Commission's motion for alternative service on them in part by arguing that alternative service via email is prohibited in Israel and thus cannot be ordered against them based on a misunderstanding of *Prewitt Enterprises, Inc. v. OPEC*, 353 F.3d 916, 924–25 (11th Cir. 2003).[1]  (ECF No. 64.)  Authorizing service via email for Huf is consistent with *Prewitt*.

26. In *Prewitt*, the Eleventh Circuit upheld the district court's dismissal based on ineffective service of process and the court's rejection of a request for alternative service on OPEC. *Id*. No international agreement applied so Plaintiffs tried to justify use of registered or regular mail to serve OPEC pursuant to Rules 4(f)(2)(A) and 4(f)(2)(C)(ii) because registered mail was an acceptable form of service under Austria's Civil Procedure Code and regulations.  *Id*. at 922-25.  However, the Eleventh Circuit rejected the argument because those rules "relate to the service by Austrian courts on persons resident in Austria and abroad. None of these Austrian law provisions directly pertain to service mailed from abroad upon international organizations resident in Austria." *Id*. at 925.  The Eleventh Circuit also upheld the district court's refusal to order alternative service because doing so would not "minimize the offense to foreign law" given that "Austrian law clearly provides protection to OPEC as an international organization from all methods of service of process without its consent and also requires that any service of

---

[1] Valariola, Barak and DPL claim that Israel prohibits service via email by referencing (without attaching) Israel's Civil Procedure Regulations for Israeli Courts, 5784-1984, Ch. 32, 475A & 497C, which they claim "does not permit service of process of case-initiating documents to occur by email." (ECF No. 64 at 11.) While Israeli counsel has submitted two affidavits in support of Valariola's, Barak's and DPL's efforts to avoid service, she failed to identify, discuss, analyze, or include any Israeli laws that explicitly prohibit foreigners serving Israelis via email in connection with a case outside of Israel.  See ECF No. 45-4, 64- ; *see also* Fed. R. Civ. P. 44.1.

process from abroad be effected through Austrian authorities." *Id*. at 928.

27. Unlike OPEC, Israel is a signatory to the Hague Convention, but even assuming Rule 4(f)(2) applied to Israel, *Prewitt's* analysis of the applicability of a country's Code of Civil Procedure and related regulations would equally apply to Israel's rules governing service of pleadings for actions filed in its courts.

28. The *Prewitt* court rejected plaintiff's argument that it should allow plaintiff to serve OPEC pursuant to Rule 4(f)(2) since OPEC had actual notice of the action because OPEC was not amenable to service: "[t]here must be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant." *Id*. at 924–25 (quoting *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co*., 484 U.S. 97, 104, 108 S. Ct. 404, 410, 98 L. Ed. 2d 415 (1987)) (emphasis added) (finding that defendants were not amenable to service because the Act did not provide for nationwide service of process for actions brought by private parties and defendants' contacts with Louisiana did not satisfy the state's long-arm statute). Accordingly, the Eleventh Circuit rejected plaintiff's alternative argument that the district court abused its discretion by refusing to authorize alternative service under Rule 4(f)(3) because "any circumvention of 4(f)(2)(C)(ii) … [by] directing service again by registered mail would constitute such an abuse. On these facts, we cannot read 4(f)(3) as permitting that which has already been specifically prohibited under 4(f)(2)." *Prewitt*, 353 F.3d at 927.

29. Thus *Prewitt* did not create an additional requirement to authorize service under Rule 4(f)(3) in cases where an international agreement applies; at

11

best, *Prewitt* stands for the proposition that if a defendant is not amenable to service of process plaintiff cannot bring suit against that party.

30.    Unlike the defendants in *Omni* and *Prewitt*, Huf (just like Valariola, Barak, and DPL) is <u>amenable</u> to service because the Act provides for nationwide service of process in actions brought by the Commission, Fed. R. Civ. P. 4(f)(1)-(3) authorizes service on international defendants like Huf, and Bulgaria and Israel are both signatories to the Hague Convention.

31.    Significantly, while *Omni* precluded the plaintiff from bringing its action in Louisiana, the Supreme Court nonetheless took comfort "[s]ince the [Act] authorizes broader service of process in other enforcement actions [brought by the Commission], aliens cannot consider themselves immune from the Act's provisions." *Id*. at 413.  Adopting Valariola's, Barak's and DPL's arguments and refusing to authorize alternative service on Huf (or Valariola, Barak, and DPL) would circumvent the Supreme Court's objective in *Omni* and hinder the Commission's ability to carry out its duties to enforce the Act, effectively rendering foreign fraudsters immune from preliminary injunctive relief if they refuse to waive service.

    c.  *Alternative service on Huf via email is warranted*

32.    Under Rule 4(f)(3), a court may enter an order authorizing alternative service if the method of service is not prohibited by international agreement.[2] Fed. R. Civ. P. 4(f)(3).  However, the alternative method must satisfy

---

[2] Analysis of a foreign country's laws is not a prerequisite to authorizing alternative service under Rule 4(f)(3); "In fact, as long as court-directed and not prohibited by an

"constitutional notions [of] due process. To meet this requirement, the alternative method of service must be reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of the action and afford them an opportunity to present their objections." *CFTC v. Aliaga*, 272 F.R.D. 617, 620 (S.D. Fla. 2011) (internal quotation omitted); *see also Volkswagenwerk v. Schlunk*, 486 U.S. 694, 707 (1988) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 309, 314 (1950) (where service impracticable through usual means, service that is "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford an opportunity to present their objections" is sufficient to comport with due process.); *Silvous v. Pharaon*, 54 F.3d 697, 701 (11th Cir. 1995) (quoting *Mullane*, 339 U.S. at 314) ("Personal service has not in all circumstances been regarded as indispensable to the process due to residents, and it has more often been held as unnecessary to non-residents."); *Addidas,* 2019 WL 7841807, at *2; *Tracfone Wireless, Inc. v. Bitton*, 278 F.R.D. 687, 692-93 (S.D. Fla. 2012).

33. Alternative service "is not merely a 'last resort' to be used only after other methods of service have failed; rather, Rule 4(f)(3) stands on equal footing with the other service methods enumerated in Rule 4(f)." *Int'l Designs Corp., LLC v. Qingdao SeaForest Hair Prod. Co.*, No. 17-60431-CIV, 2018 WL 2364297, at *2 (S.D. Fla. Jan. 4, 2018); *Addidas*, 2019 WL 7841807, at *2; *Codigo Music, LLC

---

international agreement, service of process ordered under Rule 4(f)(3) may be accomplished in contravention of the laws of the foreign country." *Chanel Inc. v. Zhixian*, 2010 WL 1740695, at *2 (SD Fla 2010); *Atlas One Fin. Grp., LLC v. Alarcon*, No. 12-CV-23400, 2014 WL 12571403, at *3 (S.D. Fla. Feb. 28, 2014) ("However, Plaintiff's request was made under Rule 4(f)(3) which does not require a showing that the method of service is not prohibited by the foreign country's laws.)

*v. Televisa S.A. de C.V.*, No. 15-CIV-21737-Williams/Simonton, 2017 WL 4346968, at *7 (S.D. Fla. Sept. 29, 2017) ("[T]here is no express requirement that the Plaintiffs demonstrate that service under the Hague Convention is not possible before the court may authorize the Plaintiffs to serve the Defendant under alternative means pursuant to Rule 4(f)(3).").

34. In the Eleventh Circuit, courts have authorized alternative service on foreigners by email to the defendants, their agents, or others who are in contact with defendants, among other methods. *Aliaga*, 272 F.R.D. at 620; *Addidas*, 2019 WL 7841807, at *2 (authorizing email and internet posting for service of complaint, summons, and all filings, including to defendants in Israel); *Tracfone Wireless,* 278 F.R.D. at 692-93 (authorizing alternative service via email and Fed Ex to foreign defendants); cf *Banco Nunez,* No. 19-cv-22842, 2019 WL 5963830 (S.D. Fla. Nov. 11, 2019) (no alternative service on wholly-owned U.S. subsidiary without showing of Parent's control of subsidiary).

35. Alternative service via email is warranted based on: (i) the information available to the Commission after diligent efforts to locate Huf and its owners or officers; (ii) the Commission's overwhelming evidence of a substantial fraud; and (iii) the nature and procedural posture of this serious fraud action.

36. First, while Huf is registered and organized in Bulgaria, it operates out of Israel through Valariola and Barak. (*See* ¶¶ 36-18 *supra*.) The Commission has diligently sought to obtain information to serve Huf, but its efforts have been stymied by Valariola's, Barak's, DPI's and DPL's (collectively, "DP Defendants") conduct during the Commission's investigation, including failure to produce

14

documents responsive to various lawful Commission subpoenas. (*See* ECF Nos. 58-2 ¶¶ 8-14, 76 at p.5.)

37. Second, the Commission has proffered an abundance of uncontroverted evidence of a massive fraud violating various provisions of the Commodity Exchange Act and Commission Regulations. (ECF Nos. 71, 71-1.) The evidence also shows that Valariola and Barak (and the defendant companies they control, including Huf) have refused to cooperate or comply with a Commission investigation, lawful subpoenas, provide information during testimony, or fully respond to the Israeli Securities Authority's requests. (*See id*. at 45, 58-2 ¶¶ 8-14, 71-1, 76 at p.5.) In brief, alternative service is necessary here for the same reasons this Court appointed a temporary receiver.[3] (*See* ECF No. 76.)

38. Finally, alternative service is warranted because in cases where there is sufficient grounds to enter a temporary restraining order, appoint a temporary receiver, the Commission should be able to quickly serve defendants subject to any such orders to afford them an opportunity to raise objections. Moreover, waiting for service through the Hague Convention would be inconsistent with constitutional notions of due process if it would prevent the

---

[3] While a constitutional analysis under the Fifth Amendment for personal jurisdiction is not necessary for purposes of this motion, the Commission can easily satisfy its burden to establish personal jurisdiction over Huf, which purposefully directed its business activities serving as the basis for the violations charge here to the United States, which further shows why alternative service here is appropriate. *See* ¶¶ 3, 11-16, 18 *supra*; *Republic of Panama v. BCCI Holdings*, 119 F.3d 935, 942 (11th Cir. 1997) (when "a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction[]" so the court must analyze whether the exercise of personal jurisdiction over the defendant comports with the due process clause of the Fifth Amendment, rather than the Fourteenth Amendment of the Constitution.) For example, Huf relied on Fingerhut and DPI (both in the United States) to carry out the fraudulent digital asset solicitation scheme on their behalf for at least a year and a half and sent ill-gotten gains from the scheme to bank accounts in the United States to compensate its agents for their services. *See id*. ¶¶ 3,14,15 *supra*. The Commission will fully address any challenges to personal jurisdiction if they arise at the appropriate time.

defendant from timely obtaining notice of this action and the upcoming preliminary injunction hearing.

39. The Commission thus seeks authority to send the pleadings, summons, and all other filings related to this matter via email to Huf's purported owner's email address (nathypery@gmail.com), which she used to operate his online marketing business. The Commission also seeks authority to send the pleadings, summons, and all other filings related to this matter to the emails that Valariola and Barak use to operate their online marketing business, including related to Huf.[4]

40. Authorizing service via email is reasonably calculated to afford Huf notice and an opportunity to be heard because Huf describes itself as conducting online marketing and the evidence shows that Fingerhut, Valariola, and Barak participated in Huf's online business and communicated via email to do so. *See Addidas*, 2019 WL 7841807, at *3 ("The Court concludes that e-mail service and Internet posting are indeed the most likely means of communication to reach Defendants, who operate via the Internet and rely on electronic communications for the operation of their businesses.") Moreover, Huf and DPL appear to continue to operate their fraudulent online marketing business, which further supports the need

---

[4] Huf also likely has notice based on published articles and press releases related to this matter. For example, on May 7, 2020, the Commission issued a press release through its website announcing the filing and providing a link to the Complaint. CFTC Release No. 8162-20, available at https://www.cftc.gov/PressRoom/PressReleases/8162-20 (last visited May 14, 2020). This matter has also received significant press coverage, including by the Times of Israel, which published an article on May 12, 2020 titled "U.S. charges two Israelis, one a Cop's Son, in $20 million binary options marketing fraud." Available at https://www.timesofisrael.com/us-charges-2-israelis-one-a-cops-son-in-20m-binary-options-marketing-fraud/ (last visited May 14, 2020).

for immediate relief and the likelihood that their business emails remain active. (*Id*. at 45-4 ¶ 3; *see* Ex. 3 ¶¶ 5-8, Atts. A-B.)

41. There is good cause to believe that emails to Valariola and Barak will result in notice to Huf since the evidence shows they are control persons and employ the purported owner. (*See* ¶¶ 3, 6-17 *supra*.)

> d. *In the alternative, this Court should order expedited limited discovery related to Huf.*

42. In the alternative, to the extent this Court requires additional information before authorizing alternative service via email, the Commission respectfully requests that it allow the Commission to conduct expedited limited discovery related to Huf.

43. For example, there is good cause to believe that Valariola, Barak, and DPL have documents or communications that would confirm Huf's owner's identity and contact information, and show their control of Huf or at a minimum, the frequency of their contact with Huf.

44. There is also good cause to believe that Valariola and Huf, in their capacity as control persons of DPI, DPL and/or Huf, have material information as to Huf that could resolve any doubt about the effectiveness of service via email to Pery, Valariola, and Barak for Huf.

## CONCLUSION

**WHEREFORE**, the Commission respectfully requests that the Court enter the Proposed Order of Alternative Service authorizing the Commission to serve Huf with the summons, Complaint, and all filings in connection with this matter

via email to nathypery@gmail.com, talv@digitalplatinum.com, talvalariola@gmail.com, valariolatal@gmail.com, itayb@digitalplatinum.com and itayb@digitalplatinum.com. In the alternative, the Commission respectfully requests that the Court enter the Proposed Order of Expedited Limited Discovery authorizing the Commission to conduct expedited limited discovery as to Huf.

## Local Rule 7.1 Certification

Counsel for the Commission has spoken with counsel for Valariola, Barak, and Digital Platinum Ltd. on multiple occasions, including this morning around 10 a.m. CT, and they have advised that they do not represent Huf. Undersigned cannot confer directly with Valariola, Barak or Digital Platinum, Ltd. because they are represented. Therefore, undersigned has made reasonable efforts to confer with Huf to resolve the issues raised in this motion but has been unable to do so.

Dated: May 27, 2020                         Respectfully submitted,

ATTORNEYS FOR PLAINTIFF
COMMODITY FUTURES TRADING
COMMISSION
525 West Monroe Street, Suite 1100
Chicago, Illinois 60661
(312) 596-0714 facsimile
(312) 596-0700

*/s/ Allison V. Passman*
Allison V. Passman
Senior Trial Attorney
Special Bar ID #A5502489
apassman@cftc.gov

Candice Haan
Trial Attorney
Special Bar ID #A5502564
chaan@cftc.gov

Susan J. Gradman

18

                                                Chief Trial Attorney
                                                Special Bar ID #A5501721
                                                sgradman@cftc.gov

## CERTIFICATE OF SERVICE

The undersigned, an attorney with Plaintiff Commodity Futures Trading Commission, hereby certifies that a true and accurate copy of Plaintiff's Motion for Alternate Service or In the Alternative for Expedited Limited Discovery was served on all counsel of record via the CM/ECF system, and to the registered agent of Digital Platinum, Inc. as noted below.

Digital Platinum, Inc.
c/o Jay Passerino (registered agent) ([jay.passerino@gmail.com](mailto:jay.passerino@gmail.com))
Email delivered May 27, 2020


Dated: May 27, 2020                                            Respectfully submitted,


/s/ Allison V. Passman
Senior Trial Attorney
ONE OF THE ATTORNEYS
FOR PLATINIFF
COMMODITY FUTURES
TRADING COMMISSION