**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 1:20-cv-21887-GAYLES**

**COMMODITY FUTURES TRADING COMMISSION**,

Plaintiff,

v.

**DANIEL FINGERHUT,**
**DIGITAL PLATINUM, INC.,**
**DIGITAL PLATINUM, LTD.,**
**HUF MEDIYA (A.K.A. HOOF MEDIA),**
**TAL VALARIOLA, and ITAY BARAK**,

Defendants,

**AICEL CARBONERO**,

Relief Defendant.
_______________________________________________/

**CONSENT ORDER FOR PRELIMINARY INJUNCTION AND CONTINUED APPOINTMENT OF TEMPORARY RECEIVER AND OTHER ANCILLARY RELIEF AGAINST RELIEF DEFENDANT AICEL CARBONERO**

1. **WHEREAS**, on May 4, 2020, Plaintiff Commodity Futures Trading Commission (the "Commission"), filed a Complaint, [ECF No. 1], against Defendants Daniel Fingerhut ("Fingerhut"), Digital Platinum, Ltd. ("DPL"), Digital Platinum, Inc. ("DPI"), Huf Mediya, Ltd. ("Huf"), Tal Valariola ("Valariola") and Itay Barak ("Barak") (collectively, "Digital Platinum Defendants" and together with Fingerhut, "Defendants") and Relief Defendant Aicel Carbonero ("Carbonero").

2. **WHEREAS** the Complaint charges that[1]:

a. Between June 2014 and October 2016, Fingerhut, while acting as All In Publishing's ("AIP") agent, violated Section 4c(b), 4o(1), and 6(c)(1) of the Act, 7 U.S.C. §§ 6c(b), 6o(1), 9(1) (2018) and Regulations 32.9 and

[1] The Commission filed an Amended Complaint on June 12, 2020, which alleges the same. [ECF No. 101].

180.1(a)(1)-(3), 17 C.F.R. §§ 32.9, 180.1(a)(1)-(3) (2019), which prohibit commodity options fraud, fraud by a Commodity Trading Advisor ("CTA"), and deceptive devices, schemes and/or artifices in connection with, among other things, commodities in interstate commerce and/or swap transactions ("swaps fraud");

b. Between October 2013 and November 2016, DPL, Valariola, and Barak willfully aided and abetted AIP's and Fingerhut's violations of 7 U.S.C. §§ 6c(b), 9(1) and 17 C.F.R. §§ 32.9 and 180.1(a)(1)-(3), which prohibit commodity options fraud and swaps fraud;

c. Between October 2016 and August 2018, Fingerhut and Digital Platinum Defendants violated 7U.S.C. §9(1) and 17C.F.R. §180.1(a)(1)-(3), which prohibits swaps fraud;

d. Between August 2018 and at least May 2019, Fingerhut violated Section 6(c)(2) of the Act, 7 U.S.C. § 9(2) (2018), which prohibits false or misleading statements of material facts to the Commission; and

e. Fingerhut made a series of transfers of his ill-gotten gains and used those funds to pay off the mortgage on the home that he shared with Carbonero in the summer of 2018 and thereafter quit-claimed the deed to her for $10.

3. **WHEREAS**, on May 8, 2020, this Court appointed Melanie Damian of Damian & Valori LLP as Temporary Receiver, with the full powers of an equity receiver, for Defendants and Relief Defendant, and their affiliates and subsidiaries, and required Defendants and Relief Defendant to provide the Temporary Receiver with an accounting, and set a hearing on the Commission's motion for a Preliminary Injunction for June 3, 2020.

4. **WHEREAS** Relief Defendant Carbonero, without admitting or denying the allegations in the Complaint, except for allegations relating to venue and the Court's jurisdiction over Carbonero, to which Carbonero admits, consents to the entry of this Order for Preliminary Injunction (the "Order").

**THE COMMISSION AND CARBONERO AGREE, AND THE COURT FINDS THAT:**

5. This Court has jurisdiction over Carbonero and the subject matter of this action under 28 U.S.C. § 1331 (2012) (federal question jurisdiction) and 28 U.S.C. § 1335 (district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress). This Court has jurisdiction over the subject matter of this action and Carbonero pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1(a) (2018), which authorizes the Commission to seek injunctive relief against any person whenever it shall appear that such person has engaged, is engaging, or is about to engage in any act or practice that violates any provision of the Act or any rule, regulation, or order promulgated thereunder.

6. Venue lies properly with this Court pursuant to Section 6c(e)of the Act, 7 U.S.C. §13a-1 (2018), because Carbonero is found in, inhabits, or transacts business in the Southern District of Florida, and the acts and practices in violation of the Act and Regulations have occurred within this District, among other places.

7. Carbonero has waived formal service of the Summons and Complaint in this action.

8. Carbonero waives the entry of findings of fact and conclusions of law for purposes of this Order pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") Rule 52(a)(2).

## I. DEFINITIONS:

For purposes of this Order, the following definitions apply:

9. The term "funds, assets, or other property" encompass any legal or equitable interest in, right to, or claim to, any real or personal property, whether individually or jointly, directly or indirectly controlled, and wherever located, including but not limited to: chattels, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds mail or other deliveries, inventory, checks, notes, accounts (including, but not limited to, bank accounts and accounts at

other financial institutions), credits, receivables, lines of credit, contracts (including spot, futures, options, or swaps contracts), insurance policies, and all cash, wherever located, whether in the United States or outside the United States.

10. The term "document" and "electronically stored information" are synonymous in meaning and equal in scope to the usage of the term in Fed. R. Civ. P. 34(a), and includes, but is not limited to, all writings, graphs, charts, photographs, sound recordings, images, and other data or other data compilations stored in any medium from which information can be obtained or translated, if necessary, into reasonable usable form. The terms "document" and "electronically stored information" also refer to each and every such item in Relief Defendant's actual or constructive possession, including, but not limited to: (i) all such items within the custody or control of any agents, employers, employees, or partners of the Relief Defendant; and (ii) all items which Relief Defendant has a legal or equitable right to obtain from another person. A draft or non-identical copy is a separate item within the meaning of the term. A document also includes the file and folder tabs associated with each original and copy.

11. "Relief Defendant" refers to Carbonero.

## II. RELIEF GRANTED

**THE PARTIES AGREE, AND IT IS HEREBY ORDERED that:**

### A. Preliminary Injunction

12. Carbonero, her agents, servants, employees, assigns and/or attorneys, and all persons in active concert or participation with her who receive actual notice of this Order, by personal service or otherwise, are hereby restrained, enjoined, and prohibited until further order of the Court, from directly or indirectly:

a. Destroying, deleting, deactivating or altering in any way any email account used to conduct business related to AIP, DPI, DPL, Fingerhut and/or Huf; and

b. Destroying or altering in any way any laptop computer, tablet, mobile telephone or other electronic device used to conduct business related to AIP, DPL, DPI, Huf, Fingerhut, Valariola, and/or Barak.

13. Pending further order of the Court, Carbonero is further restrained and enjoined from:

a. trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, 7 U.S.C. §1a (2018));

b. entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3(yy), 17 C.F.R. §1.3(yy)(2019)) for their personal account or for any account in which they have a direct or indirect interest;

c. having any commodity interests traded on her behalf;

d. controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

e. soliciting, receiving or accepting any funds from person for the purpose of purchasing or selling any commodity interests;

f. applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. §4.14(a)(9) (2019); and

g. acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. §3.1(a) (2019)), agent or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. §1a(38) (2018)) registered, exempted from registration or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. §4.14(a)(9) (2019).

**B. Asset Freeze Order Prohibiting the Transfer, Removal, Dissipation and Disposal of Assets**

14. Carbonero, her agents, servants, employees, assigns and/or attorneys, and all persons in active concert or participation with her, or any other person or entity that holds any accounts, funds, assets or other property of Carbonero who receive actual notice of this Order, by personal service or otherwise, are immediately restrained and enjoined from directly or indirectly withdrawing, transferring, removing, encumbering, dissipating, or otherwise disposing of any funds, assets, or other property, wherever located, including the residence located at 7276 Gary Avenue, Miami Beach, Florida 33141, and Carbonero's assets or other property held outside the United States, except as provided otherwise in this Order, or as otherwise ordered by the Court. Nothing in this order shall prevent Carbonero from earning an income from a legitimate business purpose or employment.

15. Carbonero, her agents, servants, employees, assigns and/or attorneys, and all persons in active concert or participation with her, or any other person or entity that holds any accounts, funds, assets or other property of Carbonero who receive actual notice of this Order, by personal service or otherwise, are immediately restrained and enjoined from directly or indirectly opening or causing to be opened any safe deposit boxes titled in the name of or subject to access by Carbonero.

16. Notwithstanding Section II.B of this Order, Carbonero is permitted to use her existing personal bank account at Ally Bank and two existing business bank accounts of Smiles MIA at Citibank and Wells Fargo Bank for the purpose of depositing, withdrawing or transferring funds earned or liabilities incurred after the date of this Order from activities unrelated to the allegations contained in the Complaint in this matter. With respect to such accounts, Carbonero shall be required to abide by the following conditions:

a. The two business accounts shall remain in the name of Smiles MIA only;

b. The personal bank account at Ally Bank shall remain in the name of Carbonero only;

c. Carbonero shall use the two Smiles MIA business accounts for operating and related expenses of Smiles MIA;

d. Carbonero shall not open any safe deposit boxes;

e. Carbonero is prohibited from providing any other entity or individual any control, direct or indirect beneficial interest, discretionary authority or power of attorney over the accounts;

f. Carbonero shall immediately provide the Temporary Receiver and the Commission the address of the branches at which the accounts were opened;

g. Carbonero shall set up the accounts to automatically send monthly statements to the Receiver (or her counsel) and permit the Temporary Receiver to have "view-only" online access to the accounts so she can monitor the account's activity;

h. Carbonero shall provide to the Temporary Receiver, on a monthly basis, copies of the monthly bank statements for the accounts. Further, Carbonero shall cooperate with the Temporary Receiver to provide information to confirm that any activity in the accounts, including deposits, withdrawals or fund transfers, was the result of lawful activities; and

i. If any of the accounts are closed, either by Carbonero or the bank, Carbonero shall immediately notify the Temporary Receiver and the Commission and provide copies of documents relating to the closing of any account, including close-out statements and all documents reflecting the reasons the account was closed.

17. Further, notwithstanding the provisions of this Section II.B, and except as provided in paragraph 16 above, at the request of the Temporary Receiver, Carbonero and any other person who has possession, custody, or control of any of Carbonero's funds, assets or other property shall transfer possession of all assets subject to this Order to the Temporary Receiver in accordance with Section II.E of this Order.

18. This Section II.B. shall not preclude Carbonero from seeking further exemptions from the asset freeze for the payment of living expenses or attorneys' fees, and shall be without prejudice to Carbonero's ability to otherwise seek exemption from the asset freeze; the Commission reserves the right to oppose any such exemption.

C. **Directives and Notice to Financial Institutions and Other that Hold or Control Assets or Records**

19. Pending further Order of this Court, immediately upon receipt of this Order, any financial or brokerage institution, business entity, or person that receives actual notice of this Order and holds or held, controls or controlled, or maintains or has maintained custody of any account or asset or other property of Carbonero at any time since June 2014 shall:

a. prohibit Carbonero and all other persons from withdrawing, transferring, removing, encumbering, dissipating, or otherwise disposing of any of Carbonero's assets, except as expressly permitted herein or as directed by further order of the Court;

b. deny Carbonero and all other persons access to any safe deposit box that is: (1) owned, controlled, managed, or held by, on behalf of, or for the benefit of Carbonero, either individually or jointly; or (2) otherwise subject to access by Carbonero;

c. not directly or indirectly destroy, alter, or dispose of, in any manner, any records relating to the business activities and business and personal finances of Carbonero;

d. not deny a request by the Commission to inspect all records pertaining to every account or asset owned, controlled, managed, or held by, on behalf of, or for the benefit of Carbonero, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, digital asset transaction reports, 1099 forms, and safe deposit box logs. As an alternative to allowing inspection of records, a financial or brokerage institution, business entity or other person may provide copies of records requested by the Commission.

e. Within five business days of receiving a copy of this Order, provide the Temporary Receiver a statement setting forth: (1) the identification number of each and every account or asset owned, controlled, managed, or held by,

on behalf of, or for the benefit of Carbonero, either individually or jointly; (2) the balance of each such account, or description of the nature and value of such asset as of the close of business on the day on which this Order is received, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other asset was remitted; and (3) the identification of any safe deposit box that is either owned, controlled, managed, or held by, on behalf of, or for the benefit of Carbonero, either individually or jointly, or is otherwise subject to access by Carbonero.

f. Within ten business days of a request by the Temporary Receiver, or such longer period specified by the Temporary Receiver, provide the Temporary Receiver with copies of all records pertaining to any account or asset owned, controlled, managed, or held by, on behalf of, or for the benefit of Carbonero, either individually or jointly, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs; and

g. Cooperate with all reasonable requests of the Temporary Receiver relating to implementation of this Order, including transferring Carbonero's funds at the Temporary Receiver's direction and producing records related to Carbonero's accounts.

**D. Order Continuing Appointment of Temporary Receiver**

20. The Court continues the appointment of Melanie Damian of Damian & Valori LLP, 1000 Brickell Ave., Suite 1020, Miami, FL 33131 as Temporary Receiver, with the full powers of an equity receiver, for Relief Defendant Carbonero and her affiliates and subsidiaries owned or controlled by Carbonero (hereinafter referred to as the "Receivership Relief Defendants"), and of all the funds, properties, premises, accounts, income, now or hereafter due or owing to the Receivership Relief Defendants, and other assets directly or indirectly owned, beneficially or otherwise, by the Receivership Relief Defendants (hereinafter, the "Receivership Estate"). The Temporary Receiver shall be the agent of this Court in acting as Temporary Receiver under this Order.

21. The Temporary Receiver is directed and authorized to accomplish the following:

a. Assume full control of the Receivership Relief Defendants by removing the Receivership Relief Defendants, and any officer, independent contractor, employee, or agent of the Receivership Relief Defendants, from control and management of the affairs of the Receivership Relief Defendants as the Temporary Receiver deems appropriate;

b. Take exclusive custody, control, and possession of the Receivership Estate, which includes but is not limited to complete authority to sue for, collect, receive and take possession of all goods, chattels, rights, credits, moneys, effects, land, leases, books, records, work papers, and records of accounts, including computer-maintained information, contracts, financial records, funds on hand in banks and other financial institutions, and other papers and records of the Receivership Relief Defendants and customers or clients of any of Receivership Relief Defendants' business activities whose interests are now held by or under the direction, possession, custody or control of the Receivership Relief Defendants;

c. Take all steps necessary to secure premises under the control of the Receivership Relief Defendants, including, but not limited to, residential premises located in Miami, Florida;

d. Prevent the withdrawal or misapplication of funds entrusted to the Receivership Relief Defendants, and otherwise protect the interests of any customers or clients of any of Receivership Relief Defendants' business activities;

e. Manage and administer the Receivership Relief Defendants and the Receivership Estate by performing all acts incidental thereto that the Temporary Receiver deems appropriate, , and/or entering into agreements, including, but not limited to, the retention and employment of investigators, attorneys or accountants, appraisers, and other independent contractors and technical specialists of the Temporary Receiver's choice, including without limitation members and employees of the Temporary Receiver's firm, to assist, advise, and represent the Temporary Receiver;

f. Collect all money owed to the Receivership Relief Defendants;

g. Initiate, defend, compromise, adjust, intervene in, dispose of, or become a party to any actions or proceedings in state, federal or foreign court that the Temporary Receiver deems necessary and advisable to preserve or increase the value of the Receivership Estate or that the Temporary Receiver deems necessary and advisable to carry out the Temporary Receiver's mandate under this Order;

h. Issue subpoenas to obtain documents and records pertaining to the Receivership and conduct discovery in this action on behalf of the Receivership Estate;

i. Open one or more bank accounts and deposit all funds of the Receivership Estate in such designated accounts and make all payments and disbursements from the Receivership Estate from such accounts;

j. Make payments and disbursements from the Receivership Estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order, provided that the Temporary Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Relief Defendants prior to the date of entry of this Order, except for payments that the Temporary Receiver deems necessary or advisable to secure the Receivership Estate from immediate and irreparable loss; and

k. Maintain written accounts itemizing receipts and expenditures, describing properties held or managed, and naming the depositories holding funds or other assets of the Receivership Estate; make such written accounts and supporting documentation available to the Commission for inspection; and, within sixty (60) days of being appointed and periodically thereafter, as directed by the Court, file with the Court and serve on the parties a report summarizing efforts to marshal and collect assets, administer the Receivership Estate, and otherwise perform the duties mandated by this Order.

**E. Accounting and Transfer of Funds and Records to the Receiver**

22. Absent a valid assertion by Carbonero of her rights against self-incrimination under the Fifth Amendment and except as provided otherwise in this Order, to the extent Carbonero has not done so pursuant to any prior order of this Court, within five (5) business days following the service of this Order, Carbonero shall:

a. Provide the Temporary Receiver with a full detailed accounting of all funds, documents, and assets, including the assets inside and outside of the United States that are held by Carbonero, for her benefit, or under her direct or indirect control, whether jointly or singly.

b. Transfer to the territory of the United States and deliver to possession, custody, and control of the Temporary Receiver, all records, funds, and assets (other than real property) located outside of the United States that are

held by Carbonero, for her benefit, or under her direct or indirect control, whether jointly or singly.

c. Provide the Temporary Receiver access to all records of accounts or assets of Carbonero held by financial institutions located within or outside the territorial United States by signing the necessary consent forms.

23. Absent a valid assertion by Carbonero of her rights against self-incrimination under the Fifth Amendment, and to the extent Carbonero has not done so pursuant to any prior order of this Court, Carbonero shall, within 24 hours of service of this Order, cause to be prepared and delivered to the Temporary Receiver, a detailed and complete schedule of all passwords and identification (ID) numbers for all websites, cloud storage services, email and smartphone accounts, and all accounts at any bank, financial institution or brokerage firm (including any introducing broker or futures commission merchant) controlled or operated by or to which Carbonero has access in connection with her business activities and business and personal finances.

24. Absent a valid assertion by Carbonero of her rights against self-incrimination under the Fifth Amendment, and to the extent Carbonero has not done so pursuant to prior order of this Court, Carbonero shall, within 24 hour of the issuance of this Order, cause to be prepared and delivered to the Temporary Receiver, a detailed and complete schedule of all passwords to, and the location, make and model of, all computers and mobile electronic devices owned and/or used by Carbonero in connection with her business activities and business and personal finances. The schedules required by this section shall include at a minimum the make, model and description of each, along with the location, the name of the person primarily assigned to use the computer and/or mobile device, and all passwords necessary to access and use the software contained on the computer and/or mobile device.

**F. Turning Over Property to the Temporary Receiver**

25. Upon service of this Order, and absent a valid assertion by Carbonero of her rights against self-incrimination under the Fifth Amendment and except as otherwise stated in this Order, and to the extent Carbonero has not done so pursuant to prior order of this Court, Carbonero, and any other person or entity served with a copy of this Order, shall immediately or within such time as permitted by the Temporary Receiver in writing, deliver over to the Temporary Receiver:

a. Possession and custody of all funds, assets, property, and all other assets, owned beneficially or otherwise, wherever situated, of the Receivership Relief Defendants;

b. Possession and custody of records of the Receivership Relief Defendants in connection with their business activities and business and personal finances, including but not limited to, all books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title documents and other records of the Receivership Relief Defendants;

c. Possession and custody of all funds and other assets belonging to members of the public now held by the Receivership Relief Defendants; and

d. All keys, computer passwords, entry codes, and combinations to locks necessary to gain or to secure access to any of the assets or records of the Receivership Relief Defendants.

**G. Directive to Cooperate with Temporary Receiver**

26. Absent a valid assertion by Carbonero of her rights against self-incrimination under the Fifth Amendment, Carbonero, and all other persons or entities served with a copy of this Order shall cooperate fully with and assist the Temporary Receiver. This cooperation and assistance shall include, but not be limited to, providing any information to the Temporary Receiver that the Temporary Receiver deems necessary to exercising the authority as provided in this Order; providing any password required to access any computer or electronic files in any medium; and discharging the responsibilities of the Temporary Receiver under this Order, and advising all

persons who owe money to the Receivership Relief Defendants that all debts should be paid directly to the Temporary Receiver.

**H. Stay on Actions Against the Receivership Relief Defendants**

27. Except by leave of the Court, during the pendency of the receivership ordered herein, Carbonero, and all other persons and entities be and hereby are stayed from taking any action (other than the present action by the Commission) to establish or enforce any claim, right or interest for, against, on behalf of, in, or in the name of, the Receivership Relief Defendants, the Temporary Receiver, receivership assets, or the Temporary Receiver's duly authorized agents acting in their capacities as such, including but not limited to, the following actions:

a. Petitioning, or assisting in the filing of a petition that would cause the Receivership Relief Defendants to be placed in bankruptcy.

b. Commencing, prosecuting, litigating or enforcing any suit or proceeding against any of the Receivership Relief Defendants, or any of their subsidiaries or affiliates, except that such actions may be filed to toll any applicable statute of limitations;

c. Commencing, prosecuting, continuing or entering any suit or proceeding in the name or on behalf of any of the Receivership Relief Defendants, or any of their subsidiaries or affiliates;

d. Accelerating the due date of any obligation or claimed obligation, enforcing any lien upon, or taking or attempting to take possession of, or retaining possession of, property of the Receivership Relief Defendants, or any of their subsidiaries or affiliates, or any property claimed by any of them, or attempting to foreclose, forfeit, alter or terminate any of the Receivership Relief Defendants' interests in property, including without limitation, the establishment, granting, or perfection of any security interest, whether such acts are part of a judicial proceeding or otherwise;

e. Using self-help or executing or issuing, or causing the execution or issuance of, any court attachment, subpoena, replevin, execution or other process for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon any property, wherever located, owned by or in the possession of the Receivership Relief Defendants, or any of their subsidiaries or affiliates, or the Temporary Receiver, or any agent of the Temporary Receiver; and

f. Doing any act or thing whatsoever to interfere with the Temporary Receiver taking control, possession or management of the property subject to the receivership, or to in any way interfere with the Temporary Receiver or to harass or interfere with the duties of the Temporary Receiver; or to interfere in any manner with the exclusive jurisdiction of this Court over the property and assets of the Receivership Relief Defendants, or their subsidiaries or affiliates.

28. Provided, however, that nothing in this section shall prohibit any federal or state law enforcement or regulatory authority from commencing or prosecuting an action against the Receivership Relief Defendants.

**I. Compensation for Temporary Receiver and Personnel Hired by the Temporary Receiver**

29. The Temporary Receiver and all personnel hired by the Temporary Receiver as herein authorized, including counsel to the Temporary Receiver, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out- of-pocket expenses incurred by them for those services authorized by this Order that when rendered were (1) reasonably likely to benefit the receivership estate or (2) necessary to the administration of the estate. However, the Temporary Receiver and any personnel hired by the Temporary Receiver shall not be compensated or reimbursed by, or otherwise be entitled to, any funds from the Court or the CFTC. The Temporary Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than ninety (90) days after the date of this Order and subsequent requests filed quarterly thereafter. The requests for compensation shall itemize the time and nature of services rendered by the Temporary Receiver and all personnel hired by the Temporary Receiver.

**J. Maintenance of and Access to All Records Which Relate to the Business Activities and Business and Personal Finances of Carbonero**

30. Carbonero, and all persons or entities who receive notice of this Order by personal service or otherwise, are restrained from directly or indirectly destroying, mutilating, erasing, altering, concealing or disposing of, in any manner any documents that refer or relate in any manner to any transaction or matter described in the Complaint in this case, including the business practices or business or personal finances of Carbonero.

31. Representatives of the Commission (accompanied by representatives of other state or federal authorities, including local law enforcement and the Federal Bureau of Investigation, if the Commission so desires) shall, after giving 24 hours noticed, be allowed access to inspect the records that relate or refer to business activities and business and personal finances of Carbonero, including but not limited to both hard-copy documents and electronically stored information, wherever they may be situated and whether they are in the possession of Carbonero or others.

32. To ensure preservation and facilitate meaningful inspection and review of the records, Carbonero shall allow representatives of the Commission to inspect and make copies or images of said documents and electronically stored information, and if on-site copying of documents and electronically stored information is not practicable, representatives may make such copies off-site. After any such off-site copying, Plaintiff shall promptly return the original documents and devices upon which electronic information is stored.

33. To further facilitate meaningful inspection and review, Carbonero shall, absent a valid assertion of her individual right against self-incrimination under the Fifth Amendment, promptly provide Commission staff with:

a. the location of all records relating or referring to the business activities and business and personal finances of Carbonero;

b. all identification numbers and other identifying information for websites, cloud storage services, email and smartphone accounts, and all accounts at any bank, financial institution or brokerage firm (including any introducing broker, futures commission merchant, or off-exchange trading account) owned, controlled or operated by Carbonero, or to which Carbonero has access; and

c. all passwords to, and the location, make and model of, all computers and/or mobile electronic devices owned and/or used by Carbonero in connection with her business activities and business and personal finances.

34. When inspecting records that are subject to this Order, including those contained on computer(s) and/or other electronic device(s), the Commission should undertake reasonable measures to prevent review of Carbonero's privileged communications and/or other nonbusiness, nonfinancial materials by the Commission's attorneys and other staff who are part of the litigation team in this matter. Moreover, Carbonero (or her counsel) shall promptly contact Plaintiff's counsel to assert any claims of privilege (or other legal objections) relating to the contents of any records that are subject to this Order and promptly cooperate with Plaintiff's counsel to develop reasonable protocols to isolate and prevent disclosure of claimed privileged and/or other nonbusiness, nonfinancial materials to Plaintiff's attorneys and other staff who are part of the litigation team in this matter. However, nothing herein shall excuse Carbonero from full and immediate compliance with this Court's Order permitting Plaintiff to inspect and/or image the books and records which relate to Carbonero's business activities and her business and personal finances.

35. Nothing in this Section D shall preclude the Commission from providing materials obtained from Carbonero to any other government agency pursuant to a lawful access request by such agency.

**K. Persons Bound By this Order**

36. This Order is binding on any person who receives actual notice of this Order by personal service or otherwise and is acting in the capacity of an officer, agent, servant, employee, or attorney of Carbonero, or is in active concert or participation with Carbonero.

**L. Bond Not Required of Plaintiff or the Temporary Receiver**

37. As the Commission has made a proper showing under Section 6c(b) of the Act, 7 U.S.C. 13a-1(b) (2018), it is not required to post any bond in connection with this Order. The Temporary Receiver similarly is not required to post bond.

**M. Service of Order and Assistance of U.S. Marshal's Service and Other Law Enforcement Personnel**

38. Copies of this Order may be served by any means, including personal service, United Parcel Service, Federal Express, or other commercial overnight service, email, facsimile, Rule 5 of the Federal Rules of Civil Procedure, or Articles 2 through 10 of the Hague Convention, Service Abroad of Judicial and Extrajudicial Documents, upon any financial institution or other entity or person that may have possession, custody, or control of any records or assets of Carbonero, or that may be otherwise subject to any provision of this Order.

39. Staff of the Commission's Division of Enforcement and representatives of the United States Marshal Service are specifically appointed by the Court to effect service.

40. The United States Marshall's Service, the Federal Bureau of Investigation and local law enforcement are authorized to: accompany and assist (a) the Commission's representatives and help maintain lawful order while Commission representatives inspect records as provided in this Order, and (b) the Temporary Receiver in taking control and custody of the assets, records and business premises of the Receivership Relief Defendant.

**N. Service on Commission**

41. Carbonero shall comply with all electronic filing rules and requirements of the District Court for the Southern District of Florida, and shall serve all pleadings, correspondence, notices required by this Order, and other materials on the Commission by delivering a copy to Senior Trial Attorney Allison Passman, Division of Enforcement, 525 West Monroe Street, Suite 1100, Chicago, Illinois, 60661, by electronic filing or e-mail, in light of certain restrictions currently in place preventing retrieval of courier service (such as Federal Express or United Parcel Service) or mails, which may in any event result in heightened security and decontamination procedures applicable to the Commission's regular mail.

**O. Force and Effect**

42. This Order shall remain in full force and effect until further order of this Court and this Court retains jurisdiction of this matter to enforce this Order.

**P. Preservation of Rights**

43. Carbonero does not waive and reserves her right to invoke her Fifth Amendment privilege against self-incrimination with respect to any part of this Order to the extent such privilege shall be applicable.

**DONE AND ORDERED** in Chambers in Miami, Florida, this 26th day of June, 2020.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

CONSENTED AND APPROVED BY:

Aicel Carbonero

Date: 6/18/20

Allison V. Passman
Chief Trial Attorney
Commodity Futures Trading Commission
525 W. Monroe, Suite 1100
Chicago, Illinois 60661
apassman@cftc.gov

Date: 6/24/20

Approved as to form.

Date:

Brett Feinstein, Esq.
Feinstein & Mendez, P.A.
2600 Douglas Road, Suite 506
Coral Gables, Florida, 33134
786-636-8938