**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 1:20-CV-21887-DPG

COMMODITY FUTURES TRADING
COMMISSION,

    Plaintiff,

v.

DANIEL FINGERHUT,
DIGITAL PLATINUM, INC., DIGITAL PLATINUM,
LTD., HUF MEDIYA (A/K/A HOOF MEDIA), TAL
VALARIOLA, and ITAY BARAK

    Defendants,

AICEL CARBONERO,

    Relief Defendant.
_____/

**RECEIVER'S MOTION FOR AN ORDER TO SHOW CAUSE WHY
DEFENDANT DANIEL FINGERHUT SHOULD NOT BE HELD IN
CONTEMPT OF COURT FOR FAILURE TO COMPLY WITH THE
CONSENT ORDER FOR PERMANENT INJUNCTION [ECF NO. 283]**

    Melanie E. Damian, the court-appointed Receiver (the "Receiver") in the above-captioned enforcement action, hereby files this motion (the "Motion"), for an order to show cause why Defendant Daniel Fingerhut should not be held in contempt of Court for failure to comply with this Court's Consent Order for Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief Against Defendant Daniel Fingerhut [ECF No. 283] ("Permanent Injunction") entered on November 17, 2021, and states in support:

**FACTUAL BACKGROUND**

    I.    *The Permanent Injunction and the Authority of the Receiver*

    On November 17, 2021, this Court entered the Permanent Injunction which, among other things, appointed Melanie E. Damian, the current Court-appointed Receiver ("Receiver"), as

Permanent Receiver with respect to Defendant Fingerhut's assets and granted her the full powers of a federal equity receiver, including without limitation: "(i) all powers previously granted in the Court's Consent Order for Preliminary Injunction and Other Ancillary Relief Against Defendant Daniel Fingerhut, [ECF No. 199][1] (ii) the right, upon Court approval, to market and sell all assets of Defendant Fingerhut [with exceptions]; and (iii) the right and discretion to pursue (a) any actions necessary to recover assets, wheresoever located, of Defendant Fingerhut and/or of the Receivership Estate, and (b) any actions on behalf of the creditors of the Receivership Estate and/or Defendant Fingerhut." *See* ECF No. 283 at para. 31.

Further, the Permanent Injunction requires Defendant Fingerhut to cooperate with the Receiver's reasonable requests in the discharge of her duties which includes overseeing Fingerhut's disgorgement obligations as well as receiving the disgorgement funds levied upon Fingerhut in the amount of $400,011. *See id*. at para. 31, 32. Moreover, the provisions of the Permanent Injunction are binding upon Defendant Fingerhut, any person under his authority or control, and are further binding upon any person who receives actual notice of the Order. *See id.* at para. 39, 59.

The Permanent Injunction may be enforced through contempt proceedings. *See id.* at para. 61.

---

[1] The Preliminary Injunction extended the powers granted to the Receiver in the Court's Appointment Order [ECF No. 33] ("Appointment Order") including the authority to take exclusive custody, control, and possession of the Receivership Estate which includes all goods, lands, records, books, work papers, including computer-maintained information, and other papers and records of the Receivership Defendants and customers and clients of any of the Receivership Defendants. *See* ECF No. 33 at p. 2. The Appointment Order also requires the Defendants and all other persons or entities served with a copy of the Appointment Order to cooperate fully with and assist the Receiver in performing her duties and obligations therein. *See* ECF No. 33 at p. 7. The Appointment Order specifically states that it is binding on any person who receives actual notice of it by personal service or otherwise and is acting in the capacity of an officer, agent, servant, employee, or attorney of Defendants. *See* ECF No. 33 at p. 10.

### II. Defendant Fingerhut's Non-Compliance with the Permanent Injunction and Refusal to Cooperate with the Receiver

Following the entry of the Permanent Injunction, the Receiver began work to comply with her duties and obligations as established therein by, among other things, communicating with counsel for Defendant Fingerhut to ensure his compliance with the disgorgement obligations imposed by the Permanent Injunction. This is detailed in the Receiver's Fifth Status Report filed on March 17, 2022 [ECF No. 308] – the Receiver outlined her current efforts and future plans to ensure Defendant Fingerhut's compliance with the mandates of the Permanent Injunction and to satisfy his disgorgement obligation by, among other things, obtaining updated financial disclosures from Defendant Fingerhut. The Receiver's Fifth Status Report further detailed that Fingerhut had not made any payments towards his disgorgement obligation since the entry of the Permanent Injunction, except that his investment account which was previously frozen by the Receiver was liquidated and nearly $4,500.00 was credited towards the disgorgement obligation. *See* ECF No. 308. The funds from the liquidated investment account and the previously credited $45,769 that Fingerhut had paid to the Estate are the only funds paid towards satisfaction of Fingerhut's disgorgement obligation to date. As such, the Receiver made several attempts to contact Defendant Fingerhut, by way of emails and telephone calls to his counsel, to obtain financial disclosures from Fingerhut and develop a plan for Fingerhut to satisfy the remaining disgorgement obligation. To date, counsel for Defendant Fingerhut has failed to respond to the Receiver with financial disclosures or an update on efforts to satisfy the disgorgement obligation.

It has been well over a year since this Court entered the Permanent Injunction and Defendant Fingerhut agreed to the consent judgment and disgorgement obligation and, despite repeated requests, Fingerhut has not complied with the Receiver's requests for financial disclosures or provided a plan to pay the disgorgement obligation or to otherwise comply with the

3

mandates of the Permanent Injunction. Thus, Defendant Fingerhut's willful refusal to comply with the Permanent Injunction continues to obstruct the Receiver in the performance of her duties and obligations thereunder.

Accordingly, the Receiver files this Motion for an Order to Show Cause as to why Fingerhut should not be held in contempt of court for refusing to cooperate with the Receiver and satisfy his disgorgement obligation as is required by the Permanent Injunction.

## MEMORANDUM OF LAW

"[T]he power of a court to make an order carries with it the equal power to punish for a disobedience of that order, and the inquiry as to the question of disobedience has been, from time immemorial, the special function of the [ordering] court." *In re Debbs,* 158 U.S. 564, 594–95, 15 S.Ct. 900, 910, 39 L.Ed. 1092 (1895) (citations omitted). Specifically, Courts have the power to enforce compliance with their lawful orders through civil contempt. *See Diamond Heads, LLC v. Everingham,* No. 8:07-cv-462-T-33TBM, 2011 U.S. Dist. LEXIS 22366, at *8-10 (M.D. Fla. Jan. 28, 2011). Once the party moving for a contempt order makes a *prima facie* showing that a party subject to a court order has violated the court's orders, the burden shifts to that party to produce evidence explaining his or her noncompliance. *See id.* That party must demonstrate an inability to comply with the court's order by showing that he or she has made "in good faith all reasonable efforts to comply." *See id.*

Due process requires that the court inform the alleged contemnor of the contemptuous conduct and provide a hearing to allow the contemnor to explain why the court should not make a contempt finding. *See id.* (*citing Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991) (*affirming* district court imposing coercive sanctions based on holding that where plaintiff established clearly and convincingly that defendant had violated the court's orders,

4

the burden of production shifted to defendant to produce evidence explaining his noncompliance and defendant failed to satisfy that burden)) (citations omitted).

The Eleventh Circuit has described the procedure for seeking an order to show cause as follows:

> Precedent dictates that a plaintiff seeking to obtain the defendant's compliance with the provisions of an . . . order move the court to issue an order requiring the defendant to show cause why he should not be held in contempt and sanctioned for his noncompliance. *See Newman v. State of Alabama*, 683 F.2d 1312, 1318 (11th Cir.1982), *cert, denied*, 460 U.S. 1083, 103 S.Ct 1773, 76 L.Ed.2d 346 (1983). In his motion, the plaintiff cites the provision(s) of the injunction he wishes to be enforced, alleges that the defendant has not complied with such provision(s), and asks the court, on the basis of his representation, to order the defendant to show cause why he should not be adjudged in contempt and sanctioned. If the court is satisfied that the plaintiff has made out a case for an order to show, it issues the order to show cause.

*Wyatt By & Through Rawlins v. Rogers*, 92 F.3d 1074,1078 n.8 (11th Cir. 1996)

After issuance of an order to show cause, a defendant's liability for civil contempt is established by clear and convincing evidence that a valid court order exists, that the order was clear and unambiguous, and that the alleged violator had the ability to comply with the order. *See FTC v. Leshin*, 618 F.3d 1221, 1232 (11th Cir. 2010); *Riccard v. Prudential Ins. Co. of America*, 307 F.3d 1277, 1280 (11th Cir. 2002); *Commodity Futures Trading v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1528 (11th Cir. 1992); *see also Jordan v. Wilson*, 851 F.2d 1290, 1292, n.2 (11th Cir. 1988) (citing *United States v. Koblitz*, 803 F.2d 1523, 1527 (11th Cir. 1986)). Once the movant has met its burden, the burden shifts to the party against whom a contempt finding is sought to explain their non-compliance. *See Leshin,* 618 F.3d at 1232.

Appropriate contempt remedies include coercing compliance with the Court's order, requiring compensation for losses sustained as a result of the violation, or both. *See United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947); *McGregor v. Chierico*, 206 F.3d 1378, 1385 (11th

Cir. 2000). In fashioning an appropriate sanction, a court should consider "the character and magnitude of the harm threatened by continued contumacy and the probable effectiveness of any suggested sanction in bringing about the result desired." *EEOC V. Guardian Pools, Inc.*, 828 F.2d 1507, 1515 (11th Cir. 1987) (*citing United States v. United Mine Workers*, 330 U.S. 258, 304, 67 S. Ct. 677, 701 (1947)).

## ARGUMENT

As set forth above in detail, Fingerhut is in clear violation of the provisions of the Permanent Injunction. The Permanent Injunction requires, among other things, that Fingerhut satisfy his disgorgement obligation and that he cooperate with the Receiver's reasonable requests in the discharge of her duties which includes overseeing Fingerhut's efforts to pay his disgorgement obligations as well as receiving and distributing the disgorgement funds levied upon Fingerhut in the amount of $400,011. *See id.* at para. 39.

Fingerhut had actual notice of the requirements of the Permanent Injunction and, as detailed *supra*, the Receiver has repeatedly requested that Fingerhut comply with the mandates therein and cooperate with the Receiver. Fingerhut has willfully ignored those requirements and refused to cooperate with the Receiver. Thus, Fingerhut's refusal to provide any financial disclosures, to make any effort to satisfy his disgorgement obligations, to cooperate with the Receiver in her collection of such disgorgement obligation is in direct violation of the provisions of the Permanent Injunction warranting the entry of an order to show cause.

Moreover, The Receiver provided Defendant Fingerhut with a draft of this Motion four business days prior to filing this Motion. Despite advance notice of the Motion, Defendant Fingerhut did not take any steps to remedy the violations of the Permanent Injunction stated herein. Therefore, Defendant Fingerhut has not made any good faith efforts to comply with the Permanent

Injunction. Accordingly, the Receiver seeks the entry of an order to show cause why Defendant Fingerhut should not be held in contempt of Court for his direct and continuing violation of the Permanent Injunction.

### CERTIFICATE OF CONFERENCE

Undersigned counsel hereby certifies that counsel for the CFTC has informed undersigned counsel that it does not object to the relief sought in this Motion. Further, as of the filing of this Motion, counsel for Fingerhut had not provided Defendant Fingerhut's position on the relief sought therein.

WHEREFORE, the Receiver respectfully requests that the Court (i) enter the attached proposed order to show cause why Defendant Fingerhut should not be held in contempt of Court for violating the Permanent Injunction by failing to comply with the Receiver's requests for financial disclosures necessary to allow the Receiver to carry out her duties with respect to collection of his disgorgement obligation, and to otherwise cooperate with the Receiver, and (ii) grant such further relief as the Court deems just and proper.

Respectfully submitted this 2nd day of May, 2023.

    Respectfully submitted,

DAMIAN | VALORI | CULMO
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: (305) 371-3960
Facsimile: (305) 371-3965
*Counsel for Melanie E. Damian,*
*Court-Appointed Receiver*

/s/Kenneth Dante Murena
Kenneth Dante Murena, Esq.
Florida Bar No. 147486
Email: kmurena@dvllp.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via electronic transmission via this Court's CM/ECF filing system on May 2, 2023 on all counsel or parties who have appeared in the above-styled action.

/s/Kenneth Dante Murena
Kenneth Dante Murena,